```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,
```
                                        **MEMORANDUM AND ORDER**

   -against-                         12-CR-214 (KAM)

```
ELVIN HILL

                    Defendant.
------------------------------------X
```

**MATSUMOTO, United States District Judge:**

      Pending before the court are (i) the government's motion to preclude cross-examination related to the Kings County District Attorney's Office decision not to charge defendant Elvin Hill ("defendant" or "Mr. Hill") in 1997, and (ii) defendant's motion to admit Franklyn Abreu's July 1, 1997 statement to a Kings County assistant district attorney.  For the reasons set forth below, the government's motion is granted and defendant's motion is denied.

I. <u>Motion to Preclude Cross-Examination Related to Kings County District Attorney's Office Decision not to Charge Defendant in 1997</u>

      The parties are familiar with the relevant background of this case.  The government has alleged that the defendant shot and killed a livery cab driver named Fredy Cuenca in Brooklyn, New York, on June 29, 1997 during the commission of a livery cab robbery, and the defendant has pleaded not guilty to that charge.  Although Mr. Hill was questioned by the police and

1

suspected of shooting and killing Mr. Cuenca in 1997, he was not charged in connection with the crime at that time by the Kings County District Attorney's Office. Mr. Hill was only indicted by a federal grand jury in March 2012. (ECF No. 1, Indictment, 3/12/12.)

The government seeks to preclude cross-examination of Michael Zeller, a former detective with the New York City Police Department who worked on the investigation in 1997 and is now an investigator with the U.S. Attorney's Office for the Eastern District of New York, and any other government witness, regarding the Kings County District Attorney's Office decision not to charge Mr. Hill with the Cuenca homicide in 1997. (ECF No. 114, Motion in Limine to Preclude Cross-Examination, 1/12/14.) Defendant argues that this cross-examination is necessary to rebut testimony that eyewitness Tonya Givens "positively identified Mr. Hill at a line-up" in 1997 because "[t]he fact that the government did not charge [Mr.] Hill immediately or shortly after the August 1997 line-up tends to show that Givens was not certain about her identification and that a charging decision was delayed as a result." (ECF No. 116, Response to Motion, 1/12/14, at 1-2.)

Under *United States v. White*, "the Government's charging decisions may be proper subjects for cross-examination and argument *if otherwise admissible*." 692 F.3d 235, 246 (2d

Cir. 2012) (emphasis added).  In this case, any knowledge by Zeller and other government witnesses about charging decisions made by the Kings County District Attorney's Office in 1997 would be based on statements made to those government witnesses by assistant district attorneys who are not being called as witnesses.  As retired sergeant Peter Meade of the New York City Police Department stated on cross-examination during a suppression hearing in this case, the decision to charge an individual "was usually decided by a District Attorney[,] not by the detectives assigned."  (Transcript of 11/13/12 Suppression Hearing at 12.)  Accordingly, any statements elicited on cross-examination of government witnesses concerning the Kings County District Attorney's Office decision not to charge Mr. Hill in 1997 would be inadmissible hearsay under Federal Rules of Evidence 801 and 802.

Although the court has already excluded this evidence as inadmissible hearsay, the court also notes that the Second Circuit held in *White* that district courts "may not automatically exclude such evidence without an inquiry into its relevance and probative value."  692 F.3d at 246.  The court finds that, even if this evidence were otherwise admissible, it would be barred under this inquiry.

First, the evidence would, at best, be of minimal probative value under Federal Rule of Evidence 401 because it

3

would only show that the Kings County District Attorney's Office might have taken Givens's identification, among other factors, into account in its decision not to charge Mr. Hill in 1997. Any connection between purported concerns about Givens's identification and the decision not to charge in 1997 would thus be based on speculation and conjecture by government witnesses who did *not* decide whether to charge Mr. Hill in 1997.

Second, the evidence would be barred by Federal Rule of Evidence 403 because its minimal probative value is substantially outweighed by a danger of confusing the issues, causing undue delay, and wasting time. *See United States v. Borrero*, No. 13 Cr. 58, 2013 U.S. Dist. LEXIS 160479, at *5 (S.D.N.Y. Nov. 1, 2013) (excluding evidence related to charging decisions under Rules 401 and 403). Based on the record before the court and the government's witness list, the reasons for the Kings County District Attorney's Office decision not to charge Mr. Hill in 1997 are unknown and would cause confusion of and speculation by the jury. Moreover, such confusing testimony is unnecessary because the evidence defense counsel seeks to present concerning Givens's 1997 identification can be elicited from Givens and Zeller during cross-examination.

II. Motion to Admit Franklyn Abreu's July 1, 1997 Statement to a Kings County Assistant District Attorney

Defendant has also moved to admit an unsworn statement made by Franklyn Abreu to a Kings County assistant district attorney on July 1, 1997, in which Abreu told the assistant district attorney that he saw a man with a "dew rag on his head point a gun" at Cuenca and that the man "with the dew rag" left from the rear passenger seat on the driver's side while another man left from the rear passenger seat on the passenger's side of the cab. (3500-MZ-2 at 7.) Abreu stated that both men were holding guns when they ran from the cab. (*Id.*) Abreu is the son of Tonya Givens and was 11 years old at the time he provided the statement at 11:00 p.m. on July 1, 1997, two days after the June 29, 1997 shooting. (*Id.*)

Defendant argues that Abreu's statement should be admitted under Federal Rule of Evidence 807, the residual exception to hearsay, because Abreu's statements are exculpatory and he is not available to testify. (ECF No. 115, Motion in Limine to Admit Statements, 1/12/14, at 3.) Specifically, Mr. Hill argues that "Abreu's statements tend to prove that Mr. Hill did not commit the murder with which he is charged" because the Confidential Witness ("CW") who is testifying against Mr. Hill has admitted to sitting behind the driver at the time of the robbery and homicide. (*Id.* at 2-3.) Mr. Hill also argues that

Abreu's statement is material and "sufficiently trustworthy under the circumstances" because it was "detailed, internally consistent and given to investigators within two days of the shooting," and therefore does not have risks associated with faulty perception, faulty memory, or faulty narration. (*Id.* at 3.) Finally, defendant has averred that he cannot locate Abreu despite diligent efforts and argues that admitting Abreu's statements serves the interests of justice because they are exculpatory and contradict the CW's statements about the crime. (*Id.*)

The government argues that "the circumstances surrounding the Abreu statement indicate a lack of reliability." (ECF No. 117, Response in Opposition re: Motion in Limine, 1/13/14, at 2.) The government notes that "[e]very other contemporaneous eyewitness account reflects that the gunman exited the cab from the rear passenger side of the vehicle," thereby contradicting Abreu's statement. (*Id.* (citing Statements of Tonya Givens dated July 1, 1997 at 3500-MZ-2 p.7 and 3500-MZ-5 ("Givens Statements") (reflecting that sole individual with gun exited from rear passenger side of cab), Statement of Nancy Holston dated June 29, 1997 at 3500-MZ-27 p. 2 ("Holston Statement") (reflecting that both individuals exited from rear passenger side, one of whom was carrying a gun).) In addition, the government notes that Abreu is the *only* witness to

6

report seeing both of the individuals running from the cab with guns. (*Id.* (citing Givens Statements; Holston Statement; Statement of Jose Dutan dated July 1, 1997 at 3500-JD-1; and Statement of George Jiminez dated July 1, 1997 at 3500-GJ-1.)

Under Federal Rule of Evidence 807, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804 [if] (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807. In addition, the proponent must give the adverse party reasonable notice of the intent to offer the statement. *Id.*

The Second Circuit has stated that hearsay should be admitted under Rule 807 if "(i) it is *particularly* trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir 2004) (quoting *United States v. Bryce*, 208 F.3d 346, 350-51

(2d Cir. 1999)) (emphasis added); *see also United States v. Vargas*, 279 F. App'x 56, 62 (2d Cir. 2008) (summary order) ("statements must be 'particularly trustworthy' to fall into the Rule 807 exception") (internal quotation and citation omitted); *O'Brien v. City of Yonkers*, No. 07-cv-3974, 2013 U.S. Dist. LEXIS 43551, at *26 n.8 (S.D.N.Y. Mar. 22, 2013) (same).

In determining whether a statement is "particularly trustworthy," courts examine whether the statement has "equivalent circumstantial guarantees of trustworthiness" as the exceptions to hearsay admissible under Rules 803 and 804, such as "corroborating circumstances indicating [its] trustworthiness." *United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003). The goal of the "trustworthiness" inquiry is to minimize the "risk peculiar to [hearsay]: (1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration, each of which decreases the reliability of the inference from the statement made to the conclusion for which it is offered." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 232 (2d Cir. 1999). "The hearsay rule ordinarily prohibits the admission of out-of-court statements by declarants on the theory that cross-examination can help test for these four classes of error, thus allowing the fact-finder to weigh the evidence properly and to discount any that is too unreliable." *Id.* "The traditional exceptions to the hearsay rule, in turn, provide the benchmark

against which the trustworthiness of evidence must be compared in a residual hearsay analysis." *Id.* Finally, the court should be mindful that the "rules on hearsay should be read to exclude unreliable hearsay but to admit reliable hearsay . . . . [S]uch 'reliable hearsay' has, of course, the effect of promoting the truth-seeking function of a criminal trial and, therefore, ought to be presented to the finders of facts." *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009) (quoting *In re Drake*, 786 F. Supp. 229, 234-35 (E.D.N.Y. 1992)).

In this case, Abreu, an 11-year-old boy, made an unsworn statement to an assistant district attorney at 11:00 p.m. two days after the shooting. Although there is no indication that Abreu was motivated by bias or an improper motive, the record is also bereft of any evidence that corroborates Abreu's account of what transpired in the cab or establishes that it is *reliable* hearsay. To the contrary, Abreu's account is not only uncorroborated, it is *contradicted* by the contemporaneous accounts provided by two other eyewitnesses, including Abreu's mother, who are testifying at trial, as well as two other eyewitnesses who are not testifying at trial. (*Compare* 3500-MZ-2 at 7 (Abreu's statement that gunman was sitting behind driver and that both men in the cab ran away while carrying guns), *with* Givens Statements (reflecting that sole individual with gun exited from rear

9

passenger side of cab), Holston Statement (reflecting that both individuals exited from rear passenger side, one of whom was carrying a gun), Statement of Jose Dutan dated July 1, 1997 at 3500-JD-1 (only one man carrying gun), and Statement of George Jiminez dated July 1, 1997 at 3500-GJ-1 (only one man carrying gun).)[1]

In *Carneglia*, the court admitted four police reports of an eyewitness's statement made between one day and eight months after a shooting under the residual hearsay exception, because those statements were consistent with statements in another police report provided by the same witness, one hour after the shooting, that the court admitted as excited utterances under Rule 803(2) (and noted was possibly a present sense impression under Rule 803(1)). *Carneglia*, 256 F.R.D. at 392-393. The court reasoned that the subsequent statements by the witness had "circumstantial guarantees of trustworthiness reflected in their consistency with the statements recorded in" the initial police report that had been admitted as excited utterances. *Id.* The fact that Abreu's eyewitness statement is

---

[1] Defendant's reliance on *Holmes v. South Carolina*, 547 U.S. 319, 324-31 (2006), in its reply is misplaced. (ECF No. 119, Reply to Response to Motion in Limine, 1/13/14, at 1.) In *Holmes*, the Supreme Court held that a South Carolina evidentiary rule that did not permit a criminal defendant "to introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict" was unconstitutional. *Holmes v. South Carolina*, 547 U.S. 319, 321, 331 (2006). Here, the court's inquiry does not focus on the prosecution's evidence but instead examines whether there is any evidence that corroborates Abreu's hearsay statement or other circumstances that demonstrate Abreu's statement is particularly trustworthy.

not corroborated by any evidence and is in fact contradicted in important respects by four other contemporaneous eyewitness accounts, including by two eyewitnesses who will be testifying at trial, distinguishes this case from *Carneglia* and fails to establish that Abreu's statement is reliable.[2]

Moreover, the circumstances of Abreu's statement do not contain sufficient indicia to establish that it is particularly trustworthy. Abreu was 11 years old at the time of the shooting and made only an unsworn statement two days after the incident, at 11:00 p.m., a significant period of time that precludes his statement from being admissible as a present sense impression under Rule 803(1). (3500-MZ-2 at 7.) Abreu's statement is brief, and there is no evidence that he was significantly closer to the shooting than his mother, Givens. (*Id.* (stating that Abreu was outside his home while Givens was sitting on top of the stairs in front of her home).) There is no indication that Abreu was ever questioned about the discrepancies between his statement and the statements provided by other witnesses, that his statement was particularly detailed in any way to suggest that it is particularly trustworthy, or that he made the statement close in time to the incident while still under the stress of excitement caused by the shooting to

---

[2] Abreu's statement is also contradicted by the CW's account. The court notes that although Abreu's statement is contradicted by four other eyewitness accounts, it would still make the same findings even if it were contradicted only by the accounts of the two eyewitnesses who are to testify at the trial.

qualify as an excited utterance under Rule 803(2). (*Id.*); *see United States v. Jackson*, 335 F.3d 170, 178 (2d Cir. 2003) (statements made by co-conspirator at his plea allocution arguably exculpating defendant that lacked corroborating circumstances indicating their trustworthiness under Fed. R. Evid. 804(b)(3) were also inadmissible under residual exception, because statements clearly lacked "equivalent circumstantial guarantees of trustworthiness" required under Rule 807); *United States v. Bortnovsky*, 879 F.2d 30, 34-35 (2d Cir. 1989) (statement in insurance adjuster's report was inadmissible because of "insufficient evidence of the statement's reliability to provide the requisite circumstantial guarantees of trustworthiness" and partly because the statement was contradicted by government's evidence).

Therefore, because there is no evidence to corroborate Abreu's statement and there is no indication that Abreu's statement has "equivalent circumstantial guarantees of trustworthiness" comparable to the exceptions to hearsay admissible under Rules 803 and 804, defendant's motion to admit Abreu's statement under the residual hearsay exception in Rule 807 is respectfully denied. *Jackson*, 335 F.3d at 178.

Finally, defendant has moved to admit Abreu's statement under Rule 402 to show that "Mr. Abreu made statements to investigators within two days of the shooting that implicated

[the CW] as the shooter" and that "[t]he jury should be informed that investigators hastily discounted Abreu's account." (ECF No. 115, Motion in Limine to Admit Statements, 1/12/14, at 4.) This motion is also denied for the reasons set forth above because defendant has failed to show that Abreu's statement was reliable, corroborated by any evidence, or should be considered as particularly trustworthy as a result of the circumstances under which it was made.

**SO ORDERED.**

Dated: January 14, 2014
       Brooklyn, New York

                                    _____  /s/_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York